NEWMAN, Circuit Judge,
dissenting from denial of the petition for hearing en banc.
This case concerns the constitutional functioning of government, the balance of government power as affects the judicial branch. The appellants, all of whom are federal judges who had entered into service before 1989, state that Congress’ repeated denials of the cost of living adjustments that had been legislated in 1989 are in violation of the Compensation Clause of Article III.[1] The Court of Federal Claims dismissed the complaint, deeming itself bound by the decision of this court in Williams v. United States, 240 F.3d 1019 (Fed.Cir.2001). The appellants acknowledge this precedent, but ask this court to hear this appeal en banc in order to reconsider our decision in Williams, citing the exceptional significance of the issues for our system of divided government.[2] The constitutional principles and statutory relationships indeed strike at the foundation of our government’s structure, and the Federal Circuit’s 2001 decision — a split and controversial ruling — has been disturbed by ensuing events and subsequent Supreme Court authority.
This appeal presents a combination of the principles of separation of powers and *1328 judicial independence. As stated in O’Donoghue v. United States, 289 U.S. 516, 531, 53 S.Ct. 740, 77 L.Ed. 1356 (1933): “The anxiety of the framers of the Constitution to preserve the independence especially of the judicial department is manifested by the provision now under review, forbidding the diminution of the compensation of the judges of courts exercising the judicial power of the United States.” The Williams court did not fully consider these principles, for that case was decided solely on the ground that the result was controlled by the Supreme Court’s decision in United States v. Will, 449 U.S. 200, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980). However, events since Williams was decided warrant hearing this appeal en banc, for they cast additional doubt on the correctness of the decision in Williams. Thus I respectfully dissent from the court’s denial of the requested hearing en bam.

The issue in Williams

The suit in Williams flowed from the enactment in 1989 of a statute that included provisions designed to ameliorate the increasing inequities in judges’ compensation, resulting from periods of high inflation. Thus the Ethics Reform Act of 1989, Pub.L. No. 101-194, 103 Stat. 1716, established that the salaries of judges, members of Congress, and certain other senior government officials would be adjusted automatically in any year in which a cost-of-living adjustment was made for all federal civil servants under the General Schedule. The Act barred the receipt of honoraria from any source, and limited compensation in other areas such as teaching.
The judges have continued to comply with the restrictions set in the 1989 Act. However, for the 1995, 1996, 1997, and 1999 fiscal years, Congress enacted legislation barring the automatic cost-of-living adjustments established by the 1989 Act. These enactments led to the Williams case, the plaintiffs raising concerns of undue “linkage” with the political branches, and arguing that since the 1989 Act provided automatic adjustments for judges, Congress’ blocking legislation effectively reduced the judges’ salaries in violation of the Compensation Clause. Although the district court agreed with the plaintiffs, a split panel of the Federal Circuit held that the Court’s decision in United States v. Will validated these blocking actions, and that no unconstitutional diminishment in judicial compensation occurred in any year in which Congress voided the cost-of-living adjustment before the start of the payment year. The panel majority rejected the plaintiffs’ argument that the 1989 Act precluded such congressional action, and this court denied rehearing en banc, amid controversy.
These issues are again presented, this time by the Beer appellants, again raising fundamental issues of constitutional import that have never been addressed by the en bam court. It is our obligation to consider these issues, particularly in view of subsequent events.

Events after the Williams decision

After our decision in Williams the Court decided United States v. Hatter, 532 U.S. 557, 121 S.Ct. 1782, 149 L.Ed.2d 820 (2001), reviewing application of the Compensation Clause to legislation imposing certain taxes from which the judiciary had previously been exempt. The Court in Hatter explained that the imposition of a new financial burden solely on judges affected the constitutional guarantee of judicial freedom from discriminatory legislative action:
Were the Compensation Clause to permit Congress to enact a discriminatory law with these features, it would authorize the Legislature to diminish, or to equalize away, those very characteristics of the Judicial Branch that Article III guarantees — characteristics which, as *1329 we have said, the public needs to secure that judicial independence upon which its rights depend. We consequently conclude that the 1983 Social Security tax law discriminates against the Judicial Branch, in violation of the Compensation Clause.
Hatter, 532 U.S. at 576, 121 S.Ct. 1782. The principles elaborated in Hatter have not yet been applied to the situation confronted in Williams and raised by the Beer appellants.
Another post-Williams event is relevant, a legislative enactment specific to judges. This statute, referred to by the parties as Section 140 (tracking its origin in a 1981 appropriations act) is as follows:
Notwithstanding any other provision of law or of this joint resolution none of the funds appropriated by this joint resolution or by any other Act shall be obligated or expended to increase, after the date of enactment of this joint resolution, any salary of any Federal judge or Justice of the Supreme Court, except as may be specifically authorized by Act of Congress hereafter enacted: Provided, That nothing in this limitation shall be construed to reduce any salary which may be in effect at the time of enactment of this joint resolution nor shall this limitation be construed in any manner to reduce the salary of any Federal judge or of any Justice of the Supreme Court. This section shall apply to fiscal year 1981 and each fiscal year thereafter.
28 U.S.C. § 461 note. This enactment, Pub.L. No. 107-77, tit. VI, § 625 (Nov. 28, 2001), has been interpreted by the government as undoing the automatic cost-of-living provision in the 1989 Ethics Act, and has been so implemented. Thus judges do not receive a government-wide cost-of-living adjustment unless authorized by a specific act of Congress. Congress did authorize such adjustment for several years, but not for the year 2007, and not for 2010. The shift from the blocking legislation in the 1990s that grouped judges with members of Congress and other senior officials for the purpose of cost-of-living adjustments, which this court considered in Williams, to this 2001 enactment that isolates judges for differential treatment, raises new concerns in light of the Hatter Court’s holding that discriminatory treatment of judges is prohibited by the Compensation Clause. See Hatter, 532 U.S. at 561, 121 S.Ct. 1782 (“the clause ... does prohibit taxation that singles out judges for specially unfavorable treatment”).
These ensuing events could not have been considered by the Williams court. They appear to reflect continuing departure from constitutional principles, and to encroach on the fundamentals of judicial independence. Judicial independence requires independence of thought, and independence from influence. The Framers designed an elegant balance, implementing Hamilton’s insight that “a power over a man’s subsistence amounts to a power over his will.” The Federalist No. 79, at 472 (C. Rossiter ed.1961), quoted in Hatter, 532 U.S. at 568, 121 S.Ct. 1782. All branches of government, indeed all citizens, share the responsibility of preservation of constitutional principles.
New issues do not diminish our obligation of zealous preservation of the fundamentals of the nation. The question is not how much strain the system can tolerate; our obligation is to deter potential inroads at their inception, for history shows the vulnerability of democratic institutions. As the Court pointed out in Hatter, the guarantees of “complete independence of the courts of justice” were deemed necessary “because the Judiciary is ‘beyond comparison the weakest of the three’ branches of Government.” 532 U.S. *1330 at 568, 121 S.Ct. 1782 (quoting The Federalist No. 79, at 472). Although judges maybe uncomfortable in the role of debating our compensation, this court’s decision in Williams has affected the entire judiciary.[3] It behooves us to accept the appeal en banc. From my colleagues’ denial of the petition, I respectfully dissent.

. U.S. Const, art. Ill, § 1 ("The Judges ... shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office.”).

. In accordance with Fed. R.App. Proc. 35(a), an appeal may be initially heard en banc either when the requested panel decision would conflict with binding precedent, or the case raises a question of exceptional importance. For this appeal, both provisions are met.

. Several states have become embroiled in similar controversy. See, e.g., Jorgensen v. Blagojevich, 211 Ill.2d 286, 285 Ill.Dec. 165, 811 N.E.2d 652 (2004) (observing that the Will case that Williams relied on is distinguishable in a way that Williams did not recognize); Larabee v. Governor of the State of N.Y., 65 A.D.3d 74, 880 N.Y.S.2d 256, 275 (2009) ("The Legislature, by subordinating the Judiciary to its whims and caprices in matters of salary adjustments, brings the Judiciary closer to the world of politics than is tolerable for the disinterested functioning of a court system that must act for 'the benefit of the whole people.'" (quoting O’Donoghue, 289 U.S. at 533, 53 S.Ct. 740)), appeal pending.